IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK ELLIOTT, | |
| Plaintiff, | No. 16 C 02749 |
| v. | Judge John F. Kness |
| VILLAGE OF WAYNE, OFFICER DANIEL GARRELTS, Star 120, of the WAYNE POLICE DEPARTMENT, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

This case centers on an automobile collision that occurred in Wayne, Illinois on March 4, 2014 and involves allegations that Daniel Garrelts, an officer of the Village of Wayne Police Department, used excessive force when removing Plaintiff Frank Elliott from his disabled automobile. Plaintiff also alleges that he was denied proper medical care during events that occurred at the police station at some point after Plaintiff was placed under arrest.

Now before the Court is Defendants' motion for partial summary judgment on Plaintiff's new *Monell* claim,[1] which alleges that the Village of Wayne itself is liable

---

[1] Acting pro se, Plaintiff filed the original complaint (Dkt. 1) and named as defendants both Officer Daniel Garrelts and the Village of Wayne. Plaintiff's complaint originally sought to hold the Village of Wayne liable for its alleged "failure to adopt policies necessary to pre[v]ent constitutional violations." (*Id.* at 3.) Following extensive pretrial proceedings, the Court set the case for a jury trial to begin on March 18, 2024. In preparing for trial, however, it became apparent to the Court that the scope of the *Monell* claim against the Village of

because its Chief of Police, Daniel Callahan, was acting as a final policymaker when he caused Plaintiff to be denied timely medical care. Defendants contend that the new claim is untimely. Plaintiff counters that the amendment properly relates back to the (timely) substance of his original complaint.

As explained below, Plaintiff's new theory in Count II does not relate back to the claims originally brought in this case. And because a two-year statute of limitations governs this proposed Section 1983 theory that accrued long ago (in March 2014), Defendants are correct that Count II is untimely. Accordingly, Defendants' motion for partial summary judgment is granted.

I.   BACKGROUND

Plaintiff Frank Elliott filed this action in 2016, pro se, against the Village of Wayne and Officer Garrelts concerning events alleged to have occurred following a traffic crash on March 4, 2014. (Dkt. 1.) In short, Plaintiff contends that Officer Garrelts used excessive force in dragging Plaintiff from his vehicle following the March 4, 2014 traffic crash. Plaintiff was taken to the hospital, where his blood was drawn (apparently to determine whether Plaintiff was intoxicated), and from there to the Village of Wayne police station. (Dkt. 137 at 2.) Once at the police station, Chief Callahan administered field sobriety tests on Plaintiff even though Plaintiff "was

---

Wayne was insufficiently clear to permit trial to go forward. *See* Dkt. 127. Accordingly, the Court struck the trial date and permitted Plaintiff (who, by that point, was acting through retained counsel) to file an amended complaint. That pleading (Dkt. 137), which is now the operative complaint, sets forth in Count II a new theory of municipal liability against the Village of Wayne based on the actions of the Chief of Police once Plaintiff had been returned to the police station from the hospital. Although not clearly designated as such, Defendant's motion for summary judgment (Dkt. 144) is directed to Count II of the amended complaint.

2

unable to stand, and was having trouble talking." (*Id.*). But "[i]nstead of seeking medical aid for Plaintiff, the Chief of Police continued the field sobriety testing, and otherwise processed Plaintiff's arrest." (*Id.*) According to Plaintiff, it took "several hours before Plaintiff was allowed to leave the police station and return to a hospital," even though Chief Callahan "knew or should have known that Plaintiff needed [but did not receive] medical attention." (*Id.*)

In his original complaint, Plaintiff alleged excessive force as well as municipal liability under *Monell* limited to deliberate indifference in hiring, training, supervision, and discipline. *Id.*; *Bohanon v. City of Indianapolis*, 46 F.4th 669, 672 (7th Cir. 2022) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). That original pleading did not refer to Chief Callahan, did not describe certain events alleged to have occurred at the police station following Plaintiff's trip to the hospital, and did not attribute any denial of care to a final policymaker.[2] After counsel appeared in 2021, Plaintiff served interrogatory answers that identified no interaction with Chief Callahan; Plaintiff later confirmed he had no changes. (Dkt. 146 ¶¶ 52–53.) Those answers were not supplemented.

In 2024, after discovery had closed, Plaintiff filed an amended complaint advancing for the first time a *Monell* theory that Chief Callahan, acting as a final decisionmaker, denied Plaintiff medical care at the police station, after the crash, while field-sobriety testing was conducted. (Dkt. 137.) Plaintiff did not add Chief

---

[2] Plaintiff checked a box on the form complaint stating "failed to provide plaintiff with needed medical care," but Plaintiff provided no factual elaboration on that point. (Dkt. 1 at 2.)

3

Callahan as an individual defendant. Defendants moved for partial summary judgment on the amended *Monell* theory, arguing it is time-barred and does not relate back to the original 2016 complaint. (Dkt. 144.)

Plaintiff does not dispute that any claims resting on the newly-added factual material accrued on March 4, 2014. Plaintiff instead relies entirely on the relation back provision of Rule 15(c)(1)(B); in Plaintiff's view, the original complaint broadly alleged a failure to provide medical attention, and the amendment merely amplifies that claim. (Dkt. 150 at 4.) Defendants respond that the amendment injects a new factual nucleus (post-hospital, stationhouse conduct by Chief Callahan as a final policymaker) not set out in the original filing. (Dkt. 153 at 2–5.) Whether the new *Monell* theory is timely thus depends on whether it arises from the same "conduct, transaction, or occurrence" described in the 2016 complaint, or instead depends on a distinct episode first pleaded after limitations expired. *See Supreme Auto Transport, LLC v. Arcelor Mittel USA, Inc.*, 902 F.3d 735, 741 (7th Cir. 2018) (Plaintiff must have "fair notice of the substance of the new allegations from the outset.").

## II. STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Rule

4

56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

### III. DISCUSSION

#### A. Plaintiff's New *Monell* Theory is Untimely and Does Not Relate Back

Under 42 U.S.C. § 1983, the forum state's statute of limitations supplies the limitations period and federal law governs accrual. *See Herrera v. Cleveland*, 8 F.4th 493, 495 n. 2 (7th Cir. 2021). In Illinois, a two-year limitations period applies. *See Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021). A Section 1983 claim accrues when the plaintiff knows or should know that his constitutional rights have been violated and who is responsible. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Moore v. Burge*, 771 F.3d 444, 447 (7th Cir. 2014); *Washington v. Summerville*, 127 F.3d 552, 555 (7th Cir. 1997). Where an amendment is filed after the limitations period expires, it survives only if it "relates back" under Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, which permits relation back when the amendment "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

5

As the Seventh Circuit has emphasized, the touchstone of any relation back inquiry is notice: that is, whether the original pleading gave the defendant "enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006). A new legal theory may therefore relate back if it is tethered to the same core of operative facts. Relation back is improper, however, when the amendment depends upon a materially different factual nucleus—new actors, time, or place—rather than an amplification of the same episode. *See id.*; *Supreme Auto Transport*, 902 F.3d at 741. Rule 15(c)(1)(C), which concerns adding or changing a party, is not implicated where, as here, the defendant entity remains the same. But the requirement that the new claim arise from the same "occurrence" remains.

In this case, resolution of Defendants' summary judgment motion turns on the framing of the "occurrence" alleged in the original pro se complaint. That is because Plaintiff does not meaningfully contest that his new alleged claim accrued on March 4, 2014, and that, as a result, the limitations period expired no later than March 3, 2016. This means that the new *Monell* claim can survive only if it relates back to the allegations in the initial complaint. (Dkt. 1 ¶ 10.)

Plaintiff fails to show that his 2016 complaint set out—or even attempted to set out—the factual episode on which the new *Monell* theory depends. As framed by the parties, the original pleading alleged excessive force and a *Monell* theory of failure to train or supervise. (Dkt. 153 at 3.) Its factual narrative focused on the crash scene

6

and identified Officer Garrelts as the relevant actor. (Dkt. 1.) Conspicuously absent were any allegations about what transpired *later* at the police station, after Plaintiff returned there from the hospital. Indeed, there was no mention at all in the 2016 complaint about the police station or whether Plaintiff went there; no mention that Plaintiff's condition deteriorated while at the station; no allegation that Chief Callahan (or any supervisor) administered field sobriety tests; and no assertion that a supervisor declined to summon medical assistance at the station.

In contrast, the amended *Monell* claim rests directly on events that happened later at the police station: it specifically attributes to Chief Callahan, in his capacity as a final decisionmaker, the decision to deny Plaintiff care. (Dkt. 137.) That is not a simple amplification of an existing claim. It is, instead, a description of a different factual occurrence involving a new actor, a new place, and a later time.

Plaintiff counters that the pro se complaint alleged a "failure to provide medical attention" and that the amendment simply fleshes out that allegation. (Dkt. 150 at 4.) But generalities do not suffice in these circumstances. Rule 15(c) permits relation back only where the earlier pleading, fairly read, foreshadowed the factual terrain of the amendment. *Santamarina*, 466 F.3d at 573. To be sure, what constitutes "notice" must be formulated generously toward imperfect pleadings, particularly those filed pro se, but it remains anchored in the four corners of the original complaint. *Id.* at 573–74 (relation back proper where the "same general set of facts" was alleged); *cf. id.* (no relation back where the amendment introduces a different factual basis). To reiterate: the core of Plaintiff's original complaint was

7

Officer Garrelts's conduct at the crash scene, not later events at the police station involving different officers. (Dkt. 1 ¶ 10) (providing a brief one paragraph description focusing solely on the crash scene conduct of Officer Garrelts). Plaintiff's original complaint did not fairly alert Defendants that Plaintiff would pursue a denial-of-care theory premised on a single decision by Chief Callahan made once Plaintiff had returned to the police station.

Two further points underscore this finding. First, the *Monell* theory itself is materially different. Two types of municipal actions govern *Monell* liability: (1) a custom or policy; or (2) allegations that a person with final policymaking authority caused the constitutional injury. *Bohanon*, 46 F.4th at 675 (citing *Monell*, 436 U.S. at 694). Plaintiff's 2016 pleading alleged municipal liability through the "custom or policy" vein: deliberate indifference in hiring, training, supervision, and discipline tied to Officer Garrelts and to facts at the crash scene. (Dkt. 1.) Conversely, the 2024 amendment pursues the alternate *Monell* theory that Chief Callahan, as the Village's final decisionmaker, denied medical care to Plaintiff at the police station. (Dkt. 137; Dkt. 146 ¶¶ 9–12, 14).

This divergence is reflected in Plaintiff's discovery conduct while represented by counsel. For example, Plaintiff answered Defendants' Interrogatory No. 9 concerning witnesses without naming Chief Callahan; later confirmed that response; and never supplemented his answer. (Dkt. 146 ¶¶ 52–54.) Plaintiff attempts, nonetheless, to shoehorn in his new *Monell* theory by referring to information revealed during discovery. Plaintiff notes that defense counsel explored medical-care

8

issues during Plaintiff's deposition and that Defendants later deposed Officer Konecki (who administered field sobriety tests at the police station). (Dkt. 150 at 5.) Rule 15(c), however, requires a court to consider what the original pleading itself put at issue during the applicable statute of limitations period, not what subsequent discovery revealed or what questions counsel thought prudent to ask after expiration of the claims. *Supreme Auto Transport*, 902 F.3d at 742 (expanded discovery tactic did not cure defects in the complaint when there was no indication defendants were put on notice before expiration of the limitations period). Discovery cannot retroactively supply notice.

Plaintiff's own litigation choices are also telling. Plaintiff consciously did not add Chief Callahan as an individual defendant in 2024, acknowledging that doing so would be "doomed to failure." (Dkt. 150 at 6.) That concession tracks the same defect that defeats relation back: namely, that the amended theory targets a new episode beyond the crash scene narrative originally alleged. (Dkt. 137.) Nor does it matter that the Village has always been a defendant: that a proposed amendment retains the same defendant does not relax the Rule's requirement that the new claim arise from the same occurrence. *Supreme Auto Transport*, 902 F.3d at 741 (relation back turns on whether "the defendant had fair notice of the substance of the new allegations from the outset.")

More broadly, finding that Plaintiff's amendment does not relate back is not inequitable. Pro se pleadings must be read liberally, of course, but not so liberally as to conjure allegations about conduct that were not fairly made in the original

9

pleading. Statutes of limitations promote finality, and to that end, Rule 15(c) seeks to balance fairness to plaintiffs against a defendant's right to rely on the scope of claims already pleaded. *Id.* at 742. As explained above, Defendants were not put on notice in 2016 that they would be called to answer allegations concerning a different actor, theory of liability, place, and time.

Accordingly, the Court holds that the amended *Monell* claim premised on Chief Callahan's alleged denial of medical care does not arise out of the conduct, transaction, or occurrence set out (or attempted to be set out) in the 2016 complaint. It thus does not relate back under Rule 15(c)(1)(B). And because the limitations period expired in 2016, the amended claim filed in 2024 is untimely. Defendants' motion for partial summary judgment is therefore granted as to the amended *Monell* claim.

## IV. CONCLUSION

Defendants' motion for partial summary judgment (Dkt. 144) is granted.

SO ORDERED in No. 16-cv-02749.

Date: March 12, 2026

JOHN F. KNESS
United States District Judge